My name is Andy Freedman, I represent the plaintiff appellant in this case. This case involves an attempt by an insurance company to claw back a bargained for settlement debt benefit, one that was to be no cost to the class members through a claimed offset based on a provision of a policy contract that by its terms did not survive and does not apply. Based on the express terms of the operative agreements and straightforward principles of contract interpretation, the district court decision should be reversed. The case arises from a class action settlement that I negotiated on behalf of a class with other attorneys with Mr. O'Quinn's firm. Those negotiations were overseen by the presiding district court judge, Howard Matz, who has since retired. There are two operative agreements in play here. The life insurance policy contract and the settlement agreement. The class members in this case are owners of universal life policies issued by Wilco's predecessor, Conseco Life Insurance Company. The policy contract provides for a 61 day grace period if the account values are insufficient to pay the applicable cost of insurance charges, and the policyholder fails to pay the charges out of pocket. The coverage will continue for 61 days, and the policyholder has a right to reinstate the policy benefits before that grace period ends. Counsel, is that right? Does the coverage continue for 61 days? Yes. I'm sorry. Under the grace period provision, in the event that the grace period begins and notice is given, then for a 61 day period, if a death occurs during that time, then the death benefit is paid, subject to a reduction for the previously unpaid cost of insurance charges. It seems to me that if coverage continues for 61 days, then your opponent's argument that you've accrued a cost for that coverage has more force. On the other hand, if during the grace period you're not covered, but you basically have the option to purchase coverage, one of two ways. Either on the 59th day, you go, oh my goodness, I forgot to pay my insurance bill. So you go and you pay it, and then you get reinstated, right? And then you get another grace period, right? Or you die, and then it seems like, I think because of state law, you get a kind of the option sort of automatically executes. It seems to me that is a little bit, if that's the case, then your argument that it didn't accrue has a lot more force. But if you actually had coverage during those days, then their argument has more force. I disagree, Your Honor, for this reason. The grace period is a specified contract provision, and it provides that in the event that a death occurs during that period, prior to any reinstatement, then a death benefit is paid. And the language is absolutely clear. The language in the policy states if the insured dies during the grace period, any past due monthly deductions will be deducted from the proceeds. It's indisputed here that the insured did not die during the grace period. There is no reference to accrued charges anywhere in the contract. There's no provision anywhere in the contract that provides that the insurance company can reduce death benefits if the insured does not die during the grace period. Here, the claim arises not under the grace period provisions of the contract, but under the bargain for settlement agreement provisions, which clearly say that the death benefit extensions are to be provided at no cost to the class members. Here, the Conceicao, Wilco now, concedes that there was no contemplation and no language in the contract itself that permits a reduction in death benefits where the insured does not die during the grace period, which is what happened here. In fact, the policy provides to the contrary. The policy provides that death benefits will be paid subject to any indebtedness, which is defined as a policy loan. So in addition to that, there's an integration clause in the insurance policy itself, which So to the extent the company wants to disregard the clear provisions of the settlement agreement, which says that these extended death benefits are provided at no cost to the class members and rely upon the policy language, it's bound by the policy provision, which provides for a reduction in death benefits in one circumstance and one circumstance only, and that is where the insured dies during the grace period. This is a matter of significance because the bargain for exchange, the option that my client and the class members who are similarly situated took, was to not reinstate their policies. That decision, the bargain quid pro quo is that those class members and my client gave up all of their contract rights under the policy itself. Those contract rights were significant. They would be a right to reinstate prior to the end of the extension. The company wouldn't agree to that because if an elderly class member were to reinstate in ill health, that would expose the company to additional exposure. They relinquished the right to change policy options and they relinquished the right to take any other settlement option other than the death benefit. So there was a bargain quid pro quo here. In exchange for the extension, with no language providing for a reduction anywhere, the class members gave up their right to reinstate. There is not a single provision of either contract anywhere that provides for accrued charges during the grace period or that provides for a reduction in death benefits in any circumstance other than where the insured dies during the grace period. There's wanted to include that provision when they had an integration clause saying that the original contract which provides for a reduction in death benefits only where the death occurs during the grace period, it was incumbent upon them to comply and modify that contract provision in writing. That was never done. Instead, the settlement agreement actually provides the contrary and counsel for Wilco to point to a single provision in the policy contract that provides for accrued death benefits, accrued policy charges rather, excuse me, that's not there. It's a figment of their imagination. I defy them to point to any provision in either contract that provides for reduction in death benefits other than the grace period itself. The claims here are under the grace period itself. That expired. That was gone. That provision of the policy was no longer operative. What is operative is the settlement itself which provides those benefits are without cost. In the circumstance here, the company reduced the death benefits payable under the settlement no cost for free death benefit extension by $33,000. If that's not a cost, I don't know what is. Again, there's nothing in any language in any provision relating to this notion or construct of some accrued policy charge. In the normal course of events, when a grace period expires, the company has no right to collect any accrued charges. If there were actually such accrued charges, the insurance company come back and sue the company. The way these contracts are drafted in the express language of the contracts provides that the life insurance company is on the hook to pay the grace benefit if a death occurs during the grace period. In that circumstance, the company's incurred a cost and it's entitled to charge the policyholder for cost because the death has occurred within the grace period. However, when the grace period expires with no death, the company has accrued no cost. The company hasn't paid a death benefit during the grace period. Instead, here, the death benefit is due and owing as a result of the settlement agreement itself. There's no provision in the settlement agreement nor was it negotiated that permitted the insurance company to after the fact reduce the agreed-upon settlement benefits. Wilco has no answer to the express language of the policy itself, which provides in one place, in one place only, under one circumstance, in one circumstance only for reduction in the agreed-upon death benefits. That is where the death occurs during the grace period. Wilco in fact concedes that that wasn't contemplated at the time these contracts were prepared. It wasn't contemplated because there was no settlement agreement, which is an independent, freestanding, separate contract. That is fatal, your honor. That is fatal because not only does the contract not include any provision for accrued charges, not only does it specifically provide, there's only one circumstance where reduction can occur, not only does it apply, does it provide that the death benefit is the stated death benefit, it has an integration clause. And for the company's concession that this was not contemplated, it was not addressed, it's not a provision of the contract, it's fatal to the claim that they can claw back a settlement benefit by imposing after the fact a civil code accrued policy charge. With that, I would reserve my additional time unless the panel has other questions. Why don't you reserve your time? Thank you very much. Mr. O'Quinn. Thank you, Judge Wardlaw, and may it please the court, John O'Quinn on behalf of WILCO. Nothing in the settlement agreement provides that any period of coverage prior to the termination date and beginning of the extension will be provided for free. But that is what the plaintiff now seeks, a forgiveness of unpaid... Counsel, what is that period of coverage? I guess one question is, does that coverage include the grace period or not? The coverage that is prior to the termination date, which is not part of the death benefit extension, includes the 61-day grace period. And that is very clearly defined in the settlement date when the policy terminates and the grace period would otherwise expire in accordance with the policy terms. If the grace period expires, the person doesn't die, just lets the insurance go. You don't go after him for the premium for the grace period, do you? No, because at that point, we've recovered the entire value of the policy itself. There's no scenario in which a policyholder receives proceeds under the policy without paying for any used grace period. And so, in the circumstance that you described, Judge Wardlaw, the policy has been surrendered. So, it has been... But that's at the end of the grace period, which according to you would mean that the policyholder would have accrued debt to the insurance company for the 60 days where he was insured. That's a valuable thing for which he would have accrued the premiums under your current theory. Yet, you don't. Your client did not go after people upon the expiration of the grace period to get the premiums they otherwise would have owed back once the policy just expired. They don't separately go after the grace period. Right, but that's what you're doing here. What I don't understand about this case is, why aren't we holding you to the exact terms of the settlement which you negotiated on behalf of Wilco? And that does not provide for them paying anything under the grace period. It's a negotiated contract in order to get that death benefit. No, Judge Wardlaw. What they got for free was the death benefit extension period. No more and no less. And there were no charges, no premiums, no costs that were billed or deducted for a day of coverage that occurred during the death benefit extension. But the settlement agreement very expressly contemplates, you can see paragraph 5 on that page. And what the second sentence shows you, it says, when the enforced death benefit extension period commences, so that's after termination, that is after the end of the grace period, then CONSECO shall discontinue billing the class member for additional premiums. And that's exactly what happened. The whole reason you get into a grace period is because we've been billing premiums that are deducted from their accumulation account. And at some point, their accumulation account goes negative. And that is what causes them to enter into the grace period. And under the settlement... Pre-settlement, counsel, counsel. So pre-settlement, let's put the settlement aside. Because if something is tied to because settlement happening, then I think it would be a cost of settlement, which the settlement agreement says you're not going to have a cost, you're not going to impose a cost. So pre-settlement, you enter into the grace period, right? If you don't die during the grace period, under what circumstance would you ever charge somebody for insurance during that grace period? Well, one... Under what circumstance, counsel? Would you ever charge somebody if they don't die during the grace period, putting aside the settlement? Yeah. In addition to the fact that they surrender the entire value of the policy, which includes the value for the grace period, I would point you to ER 60. Counsel, I don't know what that means. They surrender the entire value for the value, including the value of the grace period. So they didn't use the insurance during the grace period because they didn't die. In fact, they're not going to use the insurance at all because they're now going to die after. This is in the non-settlement world. And so the answer is that you will never charge them for that grace period. Well, I mean, in the same sense that they are not separately charged when it is deducted from a premium, excuse me, from a proceed if they die during the grace period. It's not a separate charge. They end up being essentially charged the policy terminates. But, and this is what I'm trying to point you to, Judge Van Dyke, if you would look at ER 60, there's a provision called reinstatement. What's ER 60? ER 60 is one of the examples of one of the underlying policies, Judge Wardlaw. Okay. All right. So I just want to turn to it so I can follow your argument. Sure. Absolutely. I appreciate that. Let me give you a second to turn there. Okay. So this is in a sample policy. This is one of the four policies that are at issue here. And if you look, there's a provision called reinstatement. And what that explains is that if a policyholder goes through their grace period and does not pay, and the policy is then terminated, they actually have the option to get the policy reinstated on the terms, potentially on the terms that it was before. But one of the conditions for paying the past due premiums for the grace period. And if you see there... That's to get the policy back under the, that's the terms of the policy to get the policy back. That's not in the settlement agreement. No. And the settlement agreement doesn't create a separate policy. It's quite clear in that same paragraph five on ER 186, that the enforced death benefit extension is just part of the existing enforced policy and is not a separate policy. Counselor, can I ask you something about your, I want to make sure I understand it, your argument on this reinstatement section. So let's say you stop paying. You go through your 61 days or basically two months of grace period. You wait another year, you come back, you say, I'd like to reinstate my policy. And so I assume that you have to be insurable at that month. What about the rest of the, say the 10 months? You don't pay for the, you don't pay for that. So you pay for the two months for which you had coverage under the grace period and you don't pay for the period at the end of the grace period until it gets reinstated for which you did not have coverage. And what that tells you is... Counselor, if you turn just a few more pages beyond what you, on ER 63, it tells you how long the insurance continues for. See continuation of coverage there in the upper right hand corner? Yes. And it says the insurance on all insurers will continue until, and if you read that language, it's basically saying until you no longer have money in this account to cover it. And that is when it enters into the grace period. So here it says that your insurance continues until you enter into the grace period. And then if you go just a few pages earlier than that, it says, that's where it says the insurer, if the insurer dies during the grace period, any past due monthly deductions will be deducted from the proceeds. So it seems to me, while you don't, while you don't use the word option, it seems to me that this acts like an option contract. And that is during the grace period, you're essentially giving people the option to buy back their insurance. They can do it either by dying and then it happens automatically as a matter of policy, because states require that, or you can decide to do it, right? But if you don't do either of those things, if you don't die and automatically do it, or you don't decide, well, I want to get my insurance back in force, and therefore pay your last two months worth of insurance to get it reinstated, then you never have to pay for it. In the pre-settlement world, you never have to pay for it. So the best way to describe the way it works, at least, is that it's an option. It's an option. And why is it not like that? I admit that the one exception to that is what you just showed, that if you want to reinstate your insurance, you essentially have to pay for those two months, presumably because they're saying, well, if you had died during that, we would have covered you because you would have exercised the option. But I don't see how that still doesn't change the fact that it's basically like an option. And so the extended, when you actually add the settlement on, if nobody exercised the option during that period, then if you're now charging them for that period, that is a cost related to the settlement. I don't see how that isn't a cost related to the settlement. Yeah. So Judge Van Dyke, first of all, I'm not aware of any case or any scenario in which this is treated as an option. I mean, an insurance company provides a service. The service they provide is coverage. And for those 61 days, they had coverage. They had service. So the question is whether they have to pay for services rendered that predates the free death benefit extension. And I think the clearest place you see that, Judge Van Dyke, is- Counsel, if they had coverage, you could say they had coverage, but they had coverage for free unless they died. I guess that's another way you could look at it. But the key is they didn't have to pay. You say they had coverage, but unless they died during that period or they reinstated their policy, then they were getting the coverage for free. So I guess you could call it an option or you could call it getting the coverage for free. I mean, you could say that. Or you could say that in every scenario in which they get the benefit of the grace period, they are paying for it. Because if they die during the grace period, they have to pay for it. It depends on what you mean by get the benefit of the grace period. If you say, well, they're not getting the benefit of the grace period when they die five years later under the settlement agreement either. I mean, in the sense of like- That's a very important issue, Judge Van Dyke, because they absolutely are. Because it means their death benefit extension didn't begin for an additional 61 days. And this is an important point about how paragraph five works. If they want to extend the life of their policy, they can do it before they enter into the death benefit extension. And the 61 days serve to defer when the death benefit extension began. And this particular- But this is all stuff that they had. This is all stuff they had available to them before the settlement agreement. Like I said, if I put the settlement agreement aside, I've got two things I can do. If I die for 61 days, I'm going to get the benefit and I'm going to have to pay for that benefit. And if I want to extend it, I have the ability to extend it without having to do it the way that you were talking about. Otherwise, I just have to pay my back charge premiums and I'll now have two extra months. But they didn't do either of those two things. They didn't do them. And so now you're saying because of the settlement, we're going to make them pay for that. That seems to be because of the settlement, not because of the original contract. Well, no, Judge Van Dyke, it's because they've got 61 days of coverage. And essentially under the plaintiff's theory- Counsel, they already had 61 days of coverage. I mean, didn't they already have 61 days of coverage? Under your view that they're covered, I think it's more like an option. But even if I take on your view that they were covered during those 61 days, they already have that under the original contract. Anytime you stop making your payments, you get 61 days of essentially free coverage that you only have to pay for if you die during that period. But you're adding something. You're saying, well, now you have to pay for that because of the settlement. Well, no, it's not that you're paying for it because of the settlement. You're paying for it because- You wouldn't pay for it in any other circumstance unless you died during the period. Respectfully, that's just fundamentally false. And the reason that it's false is because in any scenario, they are going to pay for that grace period. They either pay for it- Counsel, I have a slightly- Are we even allowed under the settlement agreement to consider the terms of the insurance contract? Because I'm looking at J of the settlement agreement. And obviously, neither one of us use a role. We construe the settlement agreement in favor of one party versus another. But you also said, no parole or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the parties, or their counsel, or the circumstances under which this agreement was made or executed. So I'm wondering whether in our analysis of this, we are required to solely look at the terms of the contract and ascribe the ordinary meaning of the terms of the contract within the contract and not look to some of the arguments you're pointing to from a sample insurance policy. Well, Judge Wardlaw, first, I'd point you to the provision 15.L on ER 220, which says there's no policy modification or expressly provided, neither the agreement or any of the relief shall be interpreted to alter in any way the contractual terms of the policy or to constitute an ovation of any policy. And the amount that they recover is entirely the death benefit that they ultimately receive is entirely governed by the policy. There's no amount that is governed in any way, shape, or form by the settlement agreement. But I think it's very simple if you just look at the settlement agreement. Nothing in the settlement agreement prohibits recovery of premiums for the grace period. And the other side concedes that when they acknowledge at page 16 of their opening brief, that if a policyholder dies during the grace period, that we are entitled to deduct those premiums. The settlement agreement does not prohibit that. And the argument that they're 59 has to pay the entirety of the grace period. But the one who dies on day 62 doesn't have to pay for those two months of coverage that they had before they entered into the death benefit extension. But there is no charge here that is because of an account of a single day of coverage they received under the death benefit extension. And so, therefore, there can't be a breach of the And if they had wanted to negotiate a different date for the beginning of their free coverage, they could have done that. But the settlement agreement says that the death, the enforced death benefit extension is at no cost to the class member. And this is a cost they otherwise wouldn't have had. That they're getting the death benefit extension because of the settlement agreement. But respectfully, Judge Worlow, I think that line of reasoning, which they advance, proves too much. I mean, they acknowledge that there were going to be monthly deductions from the accumulation account that happened every month before you reach the termination date. And those have to have been deducted. Those weren't being deducted. Where in the settlement does it say that? Well, it says it right in that second sentence, where it says, when the enforced death benefit period commences, Conseco Life shall discontinue billing the class member for additional premiums. That is that paragraph five. What do we do if we decide this settlement agreement is ambiguous on this point? Well, I think then you would have to remand it for the district court in the first instance, and there may very well be a discovery. Why would we have to do that? It says you can't take evidence. Well, I think, Judge Worlow, if what you've identified is that there is some ambiguity, and it is not, and there's no way to resolve it, I think it's very straightforward how to resolve this. Was this construed under California law? I'm sure you have a provision in there on that. What I don't understand is why these sophisticated parties, such as yourselves, who negotiated this weren't expressed on this point, and instead you put it no cost. Well, respectfully, Judge Worlow, I think it is expressed. It tells you what is no cost. It would be like if you go to a restaurant and they say, if you come have dinner, you will have dessert at no cost. Yes, the dessert is free, but you have to pay for the dinner. In this case, the dinner is the entirety of the coverage up until the termination date, and I think that these two pages, ER 185 and ER 186. I think to use your example there, I think it would be like a restaurant that you always get dessert for free. You always get dessert for free, and then they a special and they say you get another dessert for free. You get the first dessert for free unless you actually eat it, and then you run a second special, you get dessert for free, so you try to go get the second dessert for free. Now, because you tried to get the second dessert for free but didn't eat the first dessert, you charge for the first dessert. That's what's going on here. Judge Van Dyke, I think the fundamental disagreement that we're having is the idea that they don't pay for the grace period, and the grace period is paid for in one of three ways. It's either directly paid for out of pocket, whether that's a reinstatement or whether it's doing what the policyholder did here several times, which is to pay additional money into the account in order to forestall the day when the death benefit… If they're in an extension period, that's not relevant. Okay, I got that one, but they're in an extension period. They're not extending it, although that is one problem with your argument is it creates an infinite regression because you're now making them pay for the grace period, and every time under the contract when you pay for the grace period, you actually extend, so now there's no longer a grace period, so that should push it back another, but that's a separate problem, I think. Respectfully, Judge Van Dyke, it's not a problem. It's a feature. The settlement agreement specifically says, and this paragraph five is the single most important paragraph in the settlement agreement on ER 186, and it specifically says that any premiums paid on an annual basis that exceed the premium that was previously paid will operate to defer the date when the enforced death benefit extension will begin to provide the extended insurance coverage, but there's no… Wait a minute, so now we really do have the infinite regression problem because now you're making them pay for those 61 days of grace period, so under that provision you just read, that will now cause them to actually have purchased insurance, and now they're not in the grace period, so that will push the grace period back, which you'll now make them pay for again, which will now push the grace period. That's what I mean by the infinite regression problem under your interpretation of the contract. Well, I think, Judge Van Dyke, the way that it operates is very straightforward, and it's the way that it does in the same way that someone… That doesn't sound straightforward, counsel, but you were saying there's three different ways. The first one is that you pay to extend it, but that doesn't come into account here because we are, I mean, the person died years later, right, so that doesn't come in. The second is you die during, right, and that doesn't come into account here because they didn't die during. What's the third? And the third is that they surrender the policy. That is giving to the insurance company more than the value of the cost that's associated with having paid for the grace period. With these universal life policies, they have a set aside that's in place. Which one are you saying, just to be clear, because we're way over time, but I'm curious, which one are you saying happened in this case? The third, surrender the policy? Well, what I was referring to, Judge Van Dyke, is how… Which one happened in this case? Seriously, of those three, they didn't die, so I know that's not it. He didn't die during the grace period, so did they pay to extend it because then we have the infinite regression problem, or did they surrender the policy? Yeah, so Judge Van Dyke… If they surrendered the policy, then I think this is, to Judge Wardlaw's point, this is a cost of the… What you're imposing is a cost of the extension, of the free extension, because that's the… It's only happening because it was extended. Otherwise, there'd be no cost. Yeah, the modest point that I was trying to make here, Judge Van Dyke, is simply this, that everything in the underlying policy confirms that if the policyholder receives a benefit, if they receive a period of coverage, then they… Or if they incur any form of indebtedness under the policy, and yes, indebtedness is a defined term, but I think it is illustrative, that gets deducted from the proceeds first. And the fact that it is getting deducted for something prior to the extension, for a period of coverage that is prior to the extension, means that whatever you think about this case, it is not a breach of the settlement agreement. They can't state a claim for breaching the settlement agreement, because the settlement agreement only prohibits charging for the period of time that is covered by the extension period. Now, they never pled that there was a breach of the underlying policy, and I don't think that there is, because I think everything in the policy confirms that if a person has received services under the policy, then they have to pay for the services. I understand your argument on the fact that… Thank you very much, counsel, because this argument is way over time. Thank you, and I guess Mr. Friedman had four minutes or something. Thank you, Judge Wardboy. Thank you. Judge Van Dyke, I agree with your analysis. Well, I must say, at my age, I do wish death was an option. Two things, to wrap up. One, the only provision of the policy that permits a reduction in death benefits is when the insured dies during the grace period, and counsel for Wilco stated during his occurred, and I quote, after termination of the grace period. So, there's a concession that the grace period ended, and counsel pointed to no language in the policy or the settlement that contemplates or permits the reduction, which is a cost. The claims for death benefits here are occurring under and only by virtue of the settlement agreement, which was to provide at no cost. The other thing that really undermines any argument that this, after the fact, attempt to resuscitate a right to charge for the grace period, which ended, of course, years ago, are two other provisions of the settlement agreement. At the time we negotiated the settlement agreement, there was a group of terminated policyholders, people whose policies had terminated, and we negotiated provisions for them to reinstate their policy, and section 3A6, which is at ER 187, deals with reinstatement of those terminated policies, and in order to reinstate, those policyholders had to only pay premiums, I'm sorry, it's ER 187 and 88, 3BC3D. The point is, to reinstate, terminated policyholders only had to pay premium charges for the time between the date they elected reinstatement and the reinstatement itself. There's no provision for them to go back and pay for the prior charges that were due during the grace period that expired. That shows there was never an intention to charge people for those quote-unquote grace period charges. If you were terminated, you could reinstate without paying those charges. In addition, under section 3A6, which is at ER 187, that gave policyholders the right to extend the beginning of the agreed-upon death benefit extension. So, if you had somebody who was at day 59 of the grace period, they could extend coverage by now paying additional premiums going forward. Again, and that would delay when it began and obviously delay when the extension period ended. There was no requirement that those policyholders go back and pay the past due charges for the other 59 days of the grace period. It was always contemplated that these freestanding settlement benefits would be at no cost to the policyholders, let alone a cost like they're trying to recoup here, which literally occurs a decade or more after the person has entered into for grace periods during that period. So, those corresponding provisions illuminate the fact that never was contemplated, let alone provided there's a precondition to getting a free death benefit under the settlement. We'd have to go back and repay through a deduction from death benefits the grace period charges that never were activated because you didn't deny during the grace period. And with that, perhaps any questions, we will submit and thank the panel very much for your time. All right. Thank you very much, counsel. LFCC versus WOCA will be submitted and this court will adjourn the session for the day. Judge Wardlock, I say thank you. I just want to say thank you also to both. This is a complicated issue and I think you both did a really good job. So, thank you very much. Thank you very much. Thank you. I wish you had put something explicit in the settlement agreement, but thank you very much. And now the session of the court will adjourn.
judges: Wardlaw, Choe-Groves, Vandyke